**UNITED STATES of America**

v.

**Richard ESPOSITO, a/k/a "Dixon," et al., Defendants.**

**No. 76 Cr. 1074.**

United States District Court, S. D. New York.

Dec. 21, 1976.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y.; Michael D. Abzug, Sp. Atty., U. S. Dept. of Justice, of counsel, for United States.

Edward S. Panzer, New York City, for defendant Esposito.

Joel Winograd, New York City, for defendants Rizzo and Steinberg.

Marvyn M. Kornberg, Kew Gardens, N. Y., for defendant Botta.

Ronald Rubenstein, Kew Gardens, N. Y., for defendant Messina.

John Yarmosh, pro se.

Schulman & Laifer, Brooklyn, N. Y., for defendants Iannone and Albahari; Stephen R. Laifer, Brooklyn, N. Y., of counsel.

Daniel Crupain, New York City, for defendant Falco.

Frank Lopez, Brooklyn, N. Y., for defendant Renna.

Robert Ellis, New York City, for defendant Maggio.

## OPINION

EDWARD WEINFELD, District Judge.

These eleven defendants are charged in a two-count indictment with conducting an illegal gambling business and conspiring to do so, in violation of Title 18, United States Code, sections 1955 and 371. They have made pretrial motions for severance, to strike alleged surplusage from the indictment, to suppress wiretap evidence, and for a hearing to determine the fairness of pretrial voice identifications.

## MOTIONS BY DEFENDANTS IANNONE AND ALBAHARI

Defendants Iannone and Albahari move for a severance of their trial on the grounds that the jury will be unable to consider separately the evidence against each of them if they are tried with the other defendants and that the testimony of codefendants, who could not be called as witnesses in a joint trial, is necessary to establish both Iannone's and Albahari's innocence.

The charges contained in the indictment are not so complex or confusing that the jury will not be able to consider the evidence against each defendant separately. The case does not involve a large number of defendants or numerous counts upon which they will be tried, and it does not present the likelihood of "peripheral" defendants being prejudiced by evidence against codefendants that does not also incriminate them.[1] Under such circumstances, no reason exists to make an exception to the well-established rule that joinder of multiple defendants charged with a single conspiracy will ordinarily be proper.[2]

Iannone and Albahari also move for a severance on the ground that the testimony of their codefendants, Steinberg and Rizzo, is necessary to establish their innocence. There is no indication that Steinberg and Rizzo, if called at a severed trial, would waive their Fifth Amendment rights and testify, nor is there anything to indicate that if they chose to testify their statements would tend to exculpate Iannone and Albahari.[3] Indeed, the court, with the con-

1. See United States v. Miley, 513 F.2d 1191, 1209 (2d Cir.), cert. denied, 423 U.S. 842, 96 S.Ct. 74, 46 L.Ed.2d 62 (1975).

2. See, e. g., United States v. Bernstein, 533 F.2d 775, 789 (2d Cir. 1976); United States v. Miley, 513 F.2d 1191, 1209 (2d Cir.), cert. denied, 423 U.S. 842, 96 S.Ct. 74, 46 L.Ed.2d 62 (1975); United States v. Bynum, 485 F.2d 490, 495–97 (2d Cir. 1973), vacated on other grounds, 417

U.S. 903, 94 S.Ct. 2598, 41 L.Ed.2d 209 (1974); United States v. Melville, 312 F.Supp. 234, 235 (S.D.N.Y.1970); cf. United States v. Kahaner, 203 F.Supp. 78, 81–82 (S.D.N.Y.1962).

3. See United States v. Finkelstein, 526 F.2d 517, 523–24 (2d Cir. 1975), cert. denied, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976); United States v. Kahn, 381 F.2d 824, 841 (7th Cir.), cert. denied, 389 U.S. 1015, 88 S.Ct. 591,

sent of the government, heard defense counsel in camera, and nothing was presented to establish that any testimony of Steinberg and Rizzo would be of an exculpatory nature. Further, the movants have not shown the existence of circumstances entitling them to be tried after their codefendants who, even after a separate trial, may be entitled to assert their Fifth Amendment rights when called upon to testify by Iannone and Albahari.[4] Thus, the movants have not established that the testimony of their codefendants could be obtained or that such testimony would be favorable to them; they have not made a showing of sufficient prejudice to warrant a severance.

Defendants Iannone and Albahari also move to strike references to aliases in the indictment. The government has represented, however, that participants in the gambling operations charged in the indictment are repeatedly referred to by these aliases in wiretapped conversations; the aliases will thus be relevant to the case and will constitute part of the government's proof at trial. Moreover, the aliases at issue are not inherently prejudicial. Under the circumstances, inclusion of the aliases in the indictment is proper and, indeed, may well serve to obviate jury confusion.[5]

## MOTIONS BY DEFENDANTS BOTTA AND MESSINA

Defendants Botta and Messina, on behalf of all the defendants, have made an omnibus motion relating to the government's electronic surveillance of telephones which were used by the alleged gambling wirerooms. These wiretaps were conducted under orders issued by Judges Palmieri and Carter of this court on June 11 and July 10, 1975, pursuant to Title 18, United States Code, sections 2516–18.

Defendants attack the applications for wiretapping warrants in several respects. First, they claim that the affidavits in support of the applications did not demonstrate probable cause since they lacked sufficient corroboration of the informants' information. However, the affidavits set forth in detail the underlying circumstances of the informants' observations and the factual basis upon which it was determined that each informant was reliable, namely their past furnishing of truthful information. In addition, the informants' statements were corroborated both by information from other informants and by the observations of the agents themselves. The persons whom the informants claimed were operating a wireroom with certain phone numbers at certain times of the day were observed by the agents at those times entering and leaving the building where those phones were located. Moreover when the agents placed calls to those phone numbers a person answering to the name "Ritchie," the name of a person whom the informants said was a clerk in the wireroom answered the phone. Taken as a whole these affidavits are more than sufficient to establish probable cause.[6]

---

19 L.Ed.2d 661 (1967); *Gorin v. United States*, 313 F.2d 641, 646 (1st Cir.), *cert. denied*, 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052 (1963); *United States v. Pilnick*, 267 F.Supp. 791, 800 (S.D.N.Y.1967); *cf. United States v. Marquez*, 319 F.Supp. 1016 (1970), *aff'd*, 449 F.2d 89 (2d Cir. 1971).

**4.** *See United States v. Finkelstein*, 526 F.2d 517, 524–25 (2d Cir. 1975), *cert. denied*, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976).

**5.** *See United States v. Miller*, 381 F.2d 529, 536 (2d Cir. 1967), *cert. denied*, 392 U.S. 929, 88 S.Ct. 2273, 20 L.Ed.2d 1387 (1968); *United States v. White*, 386 F.Supp. 882, 885 (E.D.Wis. 1974); *United States v. Claytor*, 52 F.R.D. 360, 361 (S.D.N.Y.1971); *United States v.*

*Addonizio*, 313 F.Supp. 486, 491 (D.N.J.1970), *aff'd*, 451 F.2d 49 (3d Cir.), *cert. denied*, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972).

**6.** *See United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *United States v. Tortorello*, 342 F.Supp. 1029, 1037 (S.D.N.Y.1972), *aff'd*, 480 F.2d 764 (2d Cir.), *cert. denied*, 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973); *United States v. Becker*, 334 F.Supp. 546, 549–50 (S.D.N.Y.1971), *aff'd*, 461 F.2d 230 (2d Cir. 1972), *vacated on other grounds*, 417 U.S. 903, 94 S.Ct. 2597, 41 L.Ed.2d 208 (1974).

Defendants further contend that the affidavits in support of the applications were insufficient in that they did not set forth

a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous

as required by 18 U.S.C., section 2518(1)(c). However, the affidavits of Special Agent Bradbury stated in each case the reasons why other investigative procedures were likely to be fruitless. First, although the defendants stress that the government had received information from three informants, the fact remains that these informants were unwilling to testify for fear of their lives or personal safety and that without their testimony there was not nearly sufficient evidence to obtain convictions. In addition, none of the informants had access to the inner workings of the conspiracy, since two were merely bettors and one had formerly been a low-level participant in gambling operations. Second, most of the gambling transactions in question occurred over the telephone, making physical surveillance unproductive.[7] Third, Agent Bradbury stated that in his experience the records of gambling operations are frequently incomprehensible to the uninitiated and are often destroyed upon the execution of search warrants. Under the circumstances set forth in the affidavits, the requirements of the statute were met.[8]

Defendants claim further that the conversations intercepted during the first wiretap were sufficient to establish the identity of the persons in charge of the gambling operation and that there was therefore no need for a second wiretap. However the affidavit in support of the application for the second wiretap stated that the first wiretap had not in fact revealed the identity of all persons involved. For example, the identity of "Ritchie," the wireroom clerk, was still unknown. Thus the second application for a wiretap was properly granted.

The defendants make a further attack on the wiretap order. Seizing upon a single phrase in the applications, they claim that since the government sought authorization to intercept only "wire communications emanating from the above-named premises," the orders, which authorized interceptions of communications to and from the premises, were overbroad. However, a common sense reading of the affidavits and applications as a whole[9] makes it clear that authorization was sought to intercept calls to and from the premises.[10]

Finally, defendants claim that they are "entitled to an evidentiary hearing to determine the fairness of the identification procedures used to identify them as the voices on the wiretaps." Acceptance of this novel argument would require pretrial hearings as to the admissibility of every piece of evidence which the government plans to use at trial. Identification of a voice on a tape by a person familiar with the speaker is not the same as a lineup in which a victim or witness confronts the defendant, a situation which "is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial."[11] The vice of a lineup is the possibility of suggestiveness; the defendants have not indicated how the government could have

---

7.   See *United States v. Steinberg*, 525 F.2d 1126, 1130 (2d Cir. 1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976).

8.   *United States v. Hinton*, 543 F.2d 1002, 1010–1012 (2d Cir. 1976); *United States v. Steinberg, supra* n.7; *United States v. Kerrigan*, 514 F.2d 35 (9th Cir.), *cert. denied*, 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 249 (1975).

9.   See *United States v. Ventresca*, 380 U.S. 102, 108–09, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965);

*United States v. Tortorello*, 480 F.2d 764, 780–81 (2d Cir.), *cert. denied*, 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973).

10.   See *United States v. Cafero*, 473 F.2d 489, 502 (3d Cir. 1973), *cert. denied*, 417 U.S. 918, 94 S.Ct. 2622, 41 L.Ed.2d 223 (1974).

11.   *United States v. Wade*, 388 U.S. 218, 228, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149 (1967).

"suggested" to the person making the voice identification the identity of a speaker when the defendants concede that the government did not know who those speakers were. At trial the defendants will have ample opportunity to contest by cross-examination the validity of the voice identifications.[12] There is no need for a hearing now.[13]

Accordingly, the motion by defendants Botta and Messina is denied except with respect to their claims relating to the sealing of the wiretap tapes, as to which an evidentiary hearing is required.

---

12. The government has indicated its intention to subpoena voice exemplars from the defendants for use at trial.

13. *United States v. Albergo*, 539 F.2d 860, 863–64 (2d Cir. 1976), *cert. denied,* —— U.S. ——, 97 S.Ct. 529, 50 L.Ed.2d 611 (1976); *cf. United States v. Puco*, 453 F.2d 539, 544 n.14 (2d Cir. 1971).